We've got everybody on. Mr. Christy, Mr. Franklin, Mr. Randolph, and Mr. Wood. Okay, our last case is number 20-11292, National Trust Company v. Southern Heating and Cooling, Inc. And we will start with Mr. Christy. Thank you, Your Honor. May it please the Court, on behalf of National Trust, I would start first by saying I don't know that we can meet the spiciness of the sex trafficking and adult entertainment with a mundane issue like insurance coverage, but we'll do our best to meet that standard. It is our position in this case, Your Honor, that the District Court, in granting the motion to abstain and by dismissing this action, committed a reversible error. It abused the discretion that is given the District Court on whether or not it should entertain a declaratory judgment case. As such, National Trust contends or is asking that this Court send the case back to District Court with instructions that adhere this case on the merits. The standard by which this Court is to review the District Court's decision is one of an abuse of discretion. This Court has held on numerous occasions that an abuse of discretion occurs when the District Court either misapplies the law to the facts or commits a clear error in judgment. National Trust contends that the District Court did both in reaching its conclusion in this case. First, it misapplied the law as it was originally established in both of the Supreme Court decisions, Brilhart and Wilton, as well as this Circuit's decision in Emeritus. It misapplied it by reaching a conclusion initially that this case, along with the State Court action, constituted what the District Court referred to as sufficiently parallel cases. National Trust contends that these cases are not parallel, and in fact, these cases are merely related cases with overlapping facts. But what in your view is a related, is a parallel case? Your Honor, I believe a parallel case, just as this Circuit said in the Emeritus decision, is a case that contains substantially the same litigants, and they are litigating substantially the same issues in both of those actions. And in this particular case, Your Honor, that simply isn't the case. Obviously, National Trust is not a party to the underlying action in State Court. It hasn't been a party since that action was initiated. The issues are entirely different that are being litigated in both of these cases. This is a declaratory judgment action in which the District Court is being asked to interpret the application of the total pollution exclusion under National Trust policy. In doing that, it's going to have to answer the question of whether carbon monoxide is a pollutant, as that word is defined within the insurance policy. And then secondly, whether the total pollution exclusion or the hostile fire exception is contained within that exclusion applies to prevent application of the total pollution exclusion. And again, it's important to note that the hostile fire exception, there's a definition in the policy. So this court or the District Court is being asked to interpret definitions that are contained within the insurance policy, whereas in the State Court action, the jury is going to be asked to determine issues of liability. That action was brought under the wrongful death statute in Alabama. Well, let me ask you this question then. And I know we've got some figuring out to do because we've got to figure out, number one, whether or not the existence of a parallel case is a threshold requirement or just a factor. And we've got to try to add some clarity to this area of the law. That's at least my perspective. But if you are right, when can a District Court decide not to hear a deck action filed by an insurance company? In most states, most states have statutes that prevent an insurance company from being sued directly unless there is a judgment on liability. Florida has that sort of a statute. I think Alabama does. I'm not really sure about Georgia. But if that's the case, when does a District Court get the opportunity or the ability to exercise discretion in favor of not hearing a declaratory judgment action? Your Honor, I think that in order to answer that question, I would refer back initially to the Supreme Court's decision and both Wilton and Brilhart and the basis for those decisions. So the overriding concern by the U.S. Supreme Court in expounding upon what this discretion is, is that we want to make sure we're not invading upon this balance between federal and state interests. That's the overriding concern. Stated another way, we want to make sure that we're giving protection to the concepts of federalism and comity and efficiency. And I say that or I start with that premise because I think that, and particularly if you look at some of the other circuit courts that have addressed this issue of nonparallelism and just how broad the discretion becomes, in almost every one of those cases, you had issues that were before the federal court that presented what I believe were unique state issues, whether that was interpreting a state statute, maybe it was an issue of state constitutional law. And I think in those situations, the District Court would still have to exercise its discretion and defer to the state court because they are matters that are unique state interests. In contrast, in a case like this, Your Honor, where we don't have what I deem to be parallel cases, we don't have an issue that is uniquely specific or is uniquely state or wrapped up in state issues. We have an issue of interpreting an insurance contract. And granted, Alabama hasn't decided whether carbon monoxide is a pollutant and hasn't had an opportunity to pass on the application of the hospital fire exception. That hasn't prevented the district courts in this state and other states on numerous occasions from deciding issues of first impression in the context specifically of the total pollution exclusion. We've cited the court to the Chalamar case, QBE, and several other cases where they... But I read the district court's decision to be really focused on the indemnification aspect and to be able to saying sort of, you know, we really need some facts developed that the issues about whether whether there was this outside fire, like how this accident occurred. All of those are going to be tried in the trial and state court. Is there any, I guess, in sort of in your view of this, is there any difference or any daylight between the duty to defend and the duty to indemnify claims? Well, clearly, Your Honor, the court has on numerous occasions discussed the difference, and there's definitely a difference between the duty to defend and indemnify. Because the duty to defend is broader than the duty to indemnify, just because the determination of the duty to indemnify, because that may not be right. It doesn't prevent the district court from still passing on the issue of the duty to defend because if it finds there is no duty to defend, then there's no duty to indemnify. So I believe that that doesn't prevent a roadblock or a barrier to the district court exercising its discretion in favor of hearing the case in federal court while the state court liability action is still pending. I have one more question for you, and it's brought upon by Judge Brasher's last question. In some states like Florida, the duty to defend is analyzed by looking just at the allegations of the complaint and the language of the insurance policy. But I'm not sure I've read Alabama law correctly, but I've located a couple of Alabama cases that say that you can go beyond the complaints in figuring out whether or not there's a duty to defend. Do you know whether or not Alabama law is like that or not? You're correct, Your Honor. Initially, the court and the insurance company or my client is supposed to look at the complaint and try to determine from the allegations in the complaint whether there is a duty to defend. So in Alabama, that is the way that we look at the duty to defend. Okay, thank you so much. And then, Mr. Christie, you've got five minutes. Patrick Franklin for National Trust, may it please the court. In analyzing the emeritus guideposts, we believe the district court gave undue weight and based its decision to abstain largely on irrelevant factors such as the possibility of certification, the possibility of overlapping facts and state interest. And in doing so, it ruled contrary to legal precedent when there was nothing unique about these two cases pending in Alabama state court and the federal declaratory judgment action, which would lend itself to do so. First, on state interest, the district court stated that the fact that the insurance contract was procured in Alabama and the fact that the insured is an Alabama company, that was a reason to abstain. National Trust contends that would be true in virtually every case where there is a federal declaratory judgment action. And that's contrary to the law of specialty underwriters versus people making maintenance, which held that a federal declaratory judgment action is precisely the mechanism to determine insurance coverage issues when there is a pending state court case on liability. District court went on to say in that case that it's routinely adjudicates coverage disputes. Therefore, we would say that basis on state interest would be contrary to that holding. The court also relied heavily on the possibility of overlapping facts, and we believe that is contrary to a couple of different cases. One Essex insurance versus Foley, which held that overlapping facts are an insufficient reason to abstain, and it's not a good reason to abstain. But I thought your colleague had said that proceeding in state court was parallel if it involves substantially the same issues. To use Judge Brasher's words, what's the daylight between overlap and substantial similarity? Well, I believe there may be these two cases present completely different issues. One is state court liability under the wrongful death statute of Alabama. The other before the federal court is interpreting an insurance contract. Those are two different legal issues, and I guess this goes to the point of the question I had before. The district court seemed to be saying that there were factual issues here that are going to be resolved by the state court case that might bear on the legal issues. What do you say about that? We disagree because the factual issues to determine liability in the state court are going to be different than the factual issues to determine whether there's a hostile fire. A hostile fire is a term of art specific to an insurance contract, and it looks to was the fire burning within the furnace where it wasn't intended to. There are different ways to determine liability in state court, which will in no time touch upon whether or not there was a hostile fire. There are two different issues, which will require two different sets of facts. But can't the jury? I mean, I know the state court jury that's trying to wrongful death case is not going to answer questions for the insurance coverage issue. But a lot of juries get detailed questionnaires with answers to specific facts. If that happens here, that won't help at all on the insurance coverage side. I don't believe so, Your Honor, because the idea that whether or not there's a hostile fire may never, ever come up in the state court. And we don't believe that it would. Well, before you even before you even get to the hostile fire, there's a question of whether or not the exclusion applies because the Alabama courts have not interpreted this exclusion yet, right? They have not interpreted the exclusion relative to whether carbon monoxide is a pollutant under that, right? And so you don't think factual development will help the answer to that question either? No, Your Honor, because it would be whether or not it's a carbon monoxide is a pollutant is unique to the language of contract of the insurance contract. The state courts will not be asked. The jury will not be asked to determine whether carbon monoxide is a pollutant. They will be asked to determine whether carbon monoxide was the cause of Mr. and Mrs. Hogue's death. We believe those are two totally separate issues which will require each court to determine separate facts. And as Mr. Christie pointed out, the idea of certification. And Your Honor, I see that my time is as you can wrap up. The idea of certification is being a reason to abstain. There are at least four cases cited by federal courts in Alabama, which have determined that a particular substance is a pollutant when no Alabama state court had done so. And they did so without certifying it to the Alabama state court. Therefore, we believe that relying on the possibility of certification was improper. Well, the Alabama state courts aren't the most willing to take on certified questions, right? I mean, we get questions answered by the Florida courts and the Georgia courts fairly often, not always, but fairly often. I can't remember the last time that an Alabama Supreme Court decided to answer a certified question. I would agree with Your Honor, which would be all the more reason for the district court to consider this issue. All right. Thank you very, very much. Thank you. Okay, Mr. Randolph, you've got the full 15 minutes. Good morning. Thank you, Your Honor. I'm Christopher Randolph, and I represent Appalease Stephen Hogue. I plan to take all the time allotted at the Appalese this morning, but Mr. Wood is here on behalf of Southern Heating and Cooling and can answer any questions the court may have specific to his client. I wish to focus on two main points in my argument this morning. First, parallelism is not required for Brillhart-Wilton abstention. And second, the district court did not abuse its broad discretion in weighing the nine emeritus factors. In regards to the parallelism issue, National Trust concedes on page eight and nine of its reply brief that a district court does not per se abuse its discretion when it abstains when there's not a parallel state court case. Although this court has never addressed in a published decision whether or not parallelism is required for Brillhart-Wilton abstention, several other circuits have done so. And on pages 44 and 45 of our brief, we cite authority in the third, fourth, fifth, sixth, seventh, eighth, and ninth circuits and tenth circuits that address that issue. This is Judge Anderson. Has any circuit court held that the insurance company must be a party in the underlying case in order for the cases to be deemed parallel and abstention appropriate? No, Your Honor, no federal circuit court has held that the insurance company must be a party to the underlying state court case in order for the Brillhart-Wilton doctrine to apply. Now, as to the parallelism issue, different courts have applied different definitions of the term parallelism. Some courts, which National Trust refers to, have said that a state and federal court case are parallel only if the insurance company is a party to both actions and coverage is an issue in both actions. Other courts, such as the Sixth Circuit and the Allstate opinion that we cite, apply a broader definition of parallelism and treat cases such as this one where you have an underlying tort case and a federal DAC action on insurance coverage. That court acknowledged that cases such as those could be parallel in some district courts. So do I understand you that there are federal circuit courts of appeal that have held that the mere fact that the insurance company is not a party in the underlying state suit means that there can be no abstention? No, Your Honor, I'm sorry if I misspoke. No court has held that there can be no abstention when the insurance company is not a party to the underlying state court action. Every circuit to address the issue has held that a district court has discretion to abstain regardless of whether the insurance company is a party to the state court action. Here's a question I have for you, Mr. Randolph. I tend to agree with you that parallelism is not the end-all be-all. It's not necessary, but isn't the degree to which something is going to be resolved by a state court proceeding relevant to the consideration about whether to abstain? Yes, it certainly is relevant, and the district court noted that in its analysis on page nine of its opinion. I guess my point is, the insurance company says, look, the state court action is going to be about why this person died, whether the company is liable for it. We're trying to get a resolution of whether we have to defend the company under our insurance contract, and it's a completely separate issue. What do you say about that? Well, the degree to which the state and federal court cases are related does come into play as the court goes through the nine meritos factors. And the Tenth Circuit's Las Cruces decision, which we cite, provides a good explanation of how the degree of relatedness affects the application of the various factors that are weighed. We do acknowledge that in many situations where there is not a parallel state court case, the meritos factors may be less likely to weigh in favor of abstention, but that's not always going to be true. For example, here there's a common factual issue about the location of the fire inside the furnace. That could come up in both the state court liability action and in the federal court coverage action. In regards to liability, we contend that Southern Heating and Cooling was negligent because, among other things, their technicians either failed to correct a misaligned burner assembly or actually caused the misalignment when doing maintenance work. And the misalignment caused the furnace to generate excessive carbon monoxide. The location of the burner assembly, however, also is relevant to the issue of insurance coverage, because if the burner assembly was indeed misaligned, then the hostile fire exception to the pollution exclusion would apply. And the same discovery would be taking place to determine whether the burner assembly was misaligned for purposes of determining liability and for purposes of determining insurance coverage. This is Mr Randolph, and I'll ask your colleagues on the other side the same question when they have their rebuttal, but the whole notion of abstention in this context is a misnomer, right? Because the declaratory judgment statute in and of itself allows for discretionary exercise of jurisdiction. There are obviously limits to that discretion, but the statute itself allows a district court to say, no, this is not the case in which I'm going to exercise jurisdiction. It's not a judicially created abstention doctrine where jurisdiction is otherwise mandatory and required, right? Yes, Your Honor, and the use of the word may in the statutes, the Supreme Court noted in Wilton gives courts substantial and unique discretion to abstain. It's much broader discretion than courts ordinarily have. If we're up to eight factors already that are supposedly non-exclusive, shouldn't we just do away with that mirage and say it's a totality of the circumstances approach? Yes, and this court in Emeritus noted that a court is free to consider other factors in its analysis. It just outlined nine factors that could help guide district courts' analyses, and courts don't have to consider all of those. So effectively, this circuit does have a totality of the circumstances approach. The district court did not abuse its discretion when it weighed the nine Emeritus factors and concluded that they weighed in favor of abstention. Now, as Judge Jordan just noted, this is abuse of discretion review. The issue is not whether the district court could have chosen to keep this case or even whether this circuit, if reviewing the case in the first instance, would have chosen to abstain. It's whether the district court abused its substantial and unique discretion when it went through the Emeritus analysis. National Trust acknowledges that this case involves an unresolved question of Alabama law and has shown in the briefs this question about whether carbon monoxide is a pollutant has led to a deep split of authority. We cite 13 cases that have held that carbon monoxide is not a pollutant, and they cite several cases that go the other way. This is exactly the type of question where a federal court shouldn't be trying to guess Alabama law. What about the question that Judge Brasher asked earlier, which is, is there a difference between the duty to defend claim and the duty to indemnify claim? Yes, Your Honor. The analogy, for example, the first question is purely legal, right? Whether or not carbon monoxide is a pollutant, that's a purely legal question. And an Alabama court is going to have to resolve that question at one point or another, and it's not going to rely on any facts in any given case. It's just going to decide what the term means within the context of an insurance policy. Yes, Your Honor. Context could matter. For example, the court may find it significant that this carbon monoxide was emitted from a residential furnace rather than from a factory. That could come into consideration, but I do agree it is largely a pure question of law. And so does that mean that the district court should have analyzed duty to defend differently than duty to indemnify, or they were all wrapped up together in your view? I believe they're all wrapped together. The question about whether carbon monoxide is a pollutant would come up in both the duty to defend and the duty to indemnify. Also, the factor about whether the state court is in a position to resolve this through a state court declaratory judgment action or through national trust intervening in the wrongful death action. These factors would apply the same to both the duty to defend and duty to indemnify. And was that really what you're, I mean, because one of the things that we said, and I think it's sort of important as an equitable issue is that there's some alternative forum for the dispute to be resolved. And so I guess your suggestion would be, look, just follow declaratory judgment action in Alabama state court and ask the state courts to resolve it. And that's what you would suggest that they do. That's one course of action they may follow. They would also have the right to intervene in the pending wrongful death action. And the jury in the wrongful death trial could be presented with interrogatories about the location of the fire. That may be the most efficient way to resolve this issue. That would muddy up your case on the merits of wrongful death, right? In other words, it would complicate things for a jury. Not necessarily, because we will be presenting several theories of liability against Southern heating and cooling. One of which was that their technician knocked the burner assembly out of alignment or failed to notice the misalignment. So the jury would be looking at the question about the location of the furnace's fire as part of its efforts to determine whether Southern heating and cooling was negligent. Let me ask you a question about. So when I was a district court judge, I had a lot of these cases because they were all transferred to me because no one wanted to handle these cases. One of the things that always seemed difficult is that the indemnification issue really only becomes relevant once the jury returns a verdict, right? That's right. So is is it important in your in the way we would analyze this? I mean, right now we have the insurance company is, in fact, defending. And then the end in the indemnification issue really isn't ripe until this underlying case is resolved. Are those factors important, you think, in the district court's analysis about whether to handle this declaratory judgment action? Yes, that certainly is something to consider. And we agree that rightness or lack of rightness provides an alternative ground to affirm the dismissal of the duty to identify. But the district court did not enter a ruling on the merits. It did not exercise jurisdiction over the case. So this court could follow the same analysis of the district court below and. Is it at all relevant that the Alabama courts will not entertain a declaratory judgment action until after the insured has been held liable? I could see that that in a way is an indication that Alabama thinks that the declaratory judgment action ought to come after the underlying state case. Is that relevant? No, I don't believe it is, Your Honor, because I think that a similar analysis would apply under federal law with the with the rightness doctrine. Don't believe that a federal court could enter a duty to identify claim now either duty to defend, though the state court could resolve before judgment is entered against the insured. Is there really a question in this case about duty to defend? It seems to me that there's an obvious duty to defend the carbon monoxide issues is unclear under Alabama law. It seems to me there's an obvious duty to defend, is there not? We would agree that there is a a duty to defend. National Trust has not made any arguments about the hostile fire exclusion, saying that we failed to allege facts that would bring the hostile fire exclusion into play. So so we do agree that due to defend should not be a as involved. The question is, say, the duty to indemnify. I see that my time has expired. Unless the court has any further questions, I will rest on my briefs. All right. Thank you very much. OK, gentlemen, you've got one of you. One of you has two minutes for rebuttal. Your Honor, I'm going to start with a point that follows up on these these questions about there being an alternative forum. As the Supreme Court has said before, and this court has noted, the declaratory Judgment Act is an enabling act. It typically raises that point to highlight the fact that it enables the district court to declare the rights of the parties. And as one of you pointed out earlier, it doesn't require the district court to do that. It enables it. But I think the flip side of that's important to remember, too, is it also gives litigants a forum to have the district court decide or declare their rights under a policy. So while it's enabling for the court, it's also enabling for for the litigants. And just because there may be an alternative forum, I don't think that's the proper standard for the district court to apply in addressing parallelism or the bigger question of whether or not it should abstain from hearing the case. It's true that National Trust could have filed a declaratory judgment action in state court. That's going to be no more economical than what we've got now. We would still have two pieces of litigation. You would still have experts arguing in both cases. And you'd still have different triers of fact reaching these conclusions on interpretation of the contract and on on the wrongful death statute. You would have. But the advantage of this state declaratory judgment action is you would have Alabama courts deciding whether carbon monoxide is going to be a pollutant under Alabama law. And it seems to me also in Alabama that the deck action will come after the underlying action. And it's possible that issues could arise as to whether or not the insurance company is bound by a jury finding on this location issue. And Alabama law on that is very unclear, as I believe. Your Honor, may I respond? I think my time is up. Yes, go right ahead. Your Honor, I would respectfully disagree with the notion that Alabama requires the declaratory judgment action to be filed after a determination of the tort or the liability action. Alabama has the same standards in terms of determining whether the issue is right for determination. But there's nothing that says the declaratory judgment case has to be filed only after there's been a determination of the liability of the insured. So I don't think that that that causes any sort of conflict or ways in favor of the district court having abstained in this particular case. I think that the overriding question that this court has to decide, if you look at this court's decision in First Mercury, it said two things that I think are important. And that is that when you have non-parallel cases, the district court doesn't lose its discretion. And second, just because they're non-parallel, the court still has to take into account relevant factors. We contend that by analyzing the case for the purpose of determining whether they are parallel cases, your exercise or the district court's exercising that discretion. And it's considering those factors that are relevant. Do we threaten the concept of federalism, comedy, and efficiency by hearing this case in federal court when there is a liability action pending in state court? And just because there may be an alternative forum, if that were the standard, then there is probably not a single declaratory judgment action that can be heard by the federal district courts in Alabama. If Judge Jordan doesn't mind, can I ask one additional question? Yes, of course. Here's the way I tried to handle these when I was a district court judge, and I want your view. Honest assessment of this, whether this is just as bad in your perspective as dismissing the case, just stayed the case, stayed the insurance company case until after the tort claim was resolved. Because there's the indemnification issue in it and the indemnification issue and the duty to defend issue kind of mushed together. And so from your perspective, I mean, the district court could have just said, I'm not going to rule at this time on the request for a declaratory judgment. Is that just as bad from your perspective as the dismissal? Your Honor, I think you're right. The district court couldn't state the case as opposed to dismissing it. But I think that the better approach is to take on the issue of the duty to defend, which it can do at this point because we don't have the concern of that issue being right. The difficult situation for an insurer such as my client is we're defending our insured in this case under a reservation of rights. And so we're incurring those costs. And if, in fact, we don't have that obligation, it's patently unfair to the insurers to have to continue to provide that defense and not have the ability to have that issue litigated in a determination made by the district court. So while I acknowledge that that is an option as opposed to dismissing the case, I still don't think it's the best solution for the insurance company. All right. Thank you all very much. That brings us to a close for the first day of our panel. So we will be in recess until tomorrow morning.